IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

DANIEL RAY BROWN                                                                    PLAINTIFF

      v.                              Civil No. 13-3056

SHERIFF MIKE MOORE; JAIL
ADMINISTRATOR JASON DAY;
NURSE MANDY JONES; FORMER
SHERIFF DANNY HICKMAN;
DETECTIVE RYAN WATSON; and
CAPTAIN BOB KING                                                                    DEFENDANTS

## REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

This is a civil rights action filed by the Plaintiff under the provisions of 42 U.S.C. § 1983. Plaintiff proceeds *pro se* and *in forma pauperis.*

The events that give rise to this case occurred while the Plaintiff was incarcerated in the Boone County Detention Center (BCDC). Plaintiff maintains his constitutional rights were violated when: (1) he was subjected to unconstitutional conditions of confinement by being housed with inmates who had genital herpes and staph infection; (2) he was not provided with an adequate diet; (3) he was forced to watch CNN news coverage continually and had no access to local news unless he was lucky enough to get a copy of the local newspaper; (4) the detention officers were not properly trained in regard to the use of tasers and pepper spray and used these chemical agents for intimidation purposes; (5) he was not provided with a safe environment and was fearful of one inmate who was yelling, making threats, and using racial slurs; (6) he was discriminated against when Defendants failed to investigate his kidnaping; (7) personal mail was restricted to post cards only; (8) he was not given an opportunity for outside exercise; and (9) he was denied access to a law library.

The case is currently before me on the Defendants' motion for summary judgment (Doc. 55). Plaintiff requested that the Court assist him in responding by the preparation of a questionnaire. A questionnaire was prepared and sent to the Plaintiff (Doc. 61). Plaintiff has filed his response (Doc. 62) and the motion is now ready for decision.

**1. Background**

Plaintiff was incarcerated at the BCDC from August 31, 2012, until August 16, 2013, when he was transferred to the Arkansas Department of Correction (ADC). *Plaintiff's Response (Doc. 62)(hereinafter Resp.)* at ¶ 1. He was again incarcerated there from August 27, 2013, until September 11, 2013. *Id.*

Plaintiff concedes that his claim that the detention officers were not properly trained in regard to the use of tasers and pepper spray and used these chemical agents for intimidation purposes is the same claim he asserts in *Brown v. Boone County, et al.*, Civil No. 13-3065.[1] *Resp.* at ¶ 3(B). Similarly, he concedes that his claim that he was discriminated against when Defendants failed to investigate his kidnaping and his claim about restricting mail to post-cards are the same claims he asserts in *Brown v. Hickman*, Civil No. 12-3150.[2] *Id.* at ¶ 3(C). He also concedes that his claims against Detective Ryan Watson and Captain Bob King are the same as the ones he asserted in *Brown v. Hickman*, Civil No. 12-3150. *Id.* at ¶¶ 17-18. He states that he is asserting the lack of outside exercise claim in *Brown v. Hickman*, Civil No. 14-3005.[3] Finally,

---

[1] This case was dismissed with prejudice on September 5, 2014 (Doc. 51). No appeal was filed.

[2] A summary judgment motion is currently pending in this case.

[3] A summary judgment motion is currently pending in this case. Plaintiff has not responded to the motion.

-2-

in response to a question by the Court, Plaintiff notes that his denial to access to a law library claim was asserted in *Brown v. Hickman*, Civil No. 12-3150. *Resp.* at ¶ 19(L).

Two inmates, Dustin Newby and Ricky Mathis, had genital herpes. *Resp.* at ¶ 7(A). Plaintiff maintains he was in direct skin to skin contact with the two infected inmates. *Resp.* at ¶ 4(B).

Ricky Mathis also had staph infection, Plaintiff indicates Mathis' clothes and bedding were washed with those of other inmates. *Resp.* at ¶ 5. Plaintiff also states that Mathis used the same shower, the same phone, and the same living areas. *Id.* Plaintiff asserts that nothing was cleaned or sanitized. *Id.* Plaintiff maintains that Nurse Jones did not "follow protocol in separating" Newby and Mathis even though they were infectious. *Id.* at ¶ 13.

Plaintiff was incarcerated with Dustin Newby from November 29, 2012, until December 24, 2012. *Defendants' Exhibit (hereinafter Defts' Ex.)* A. Plaintiff was incarcerated with Ricky Mathis from December 3, 2012, to January 12, 2013. *Id.* Plaintiff did not make a request for medical treatment for an inflammation, infection, or contraction of staph or genital herpes while he was incarcerated at the BCDC. *Resp.* at ¶ 6.

According to Defendants, the BCDC follows a dietician approved menu that provides for inactive detainees to receive at least 2400 calories per day, spread over three meals. *Defts' Ex.* A & A-1. The BCDC has a garden that provides fresh fruits and vegetables for detainees. *Resp.* at ¶ 8(B). However, other than the few months a year when the garden yields fresh produce, Plaintiff maintains that detainees are not provided with fresh fruit or vegetables. *Id.*

Arkansas Department of Correction 309 inmates plant and harvest the crops.[4] *Resp.* at ¶ 8(C). The 309 inmates also assist in canning the fruits and vegetables for preservation and use during non-harvest months. *Defts' Ex.* A; *Resp.* at ¶ 8(G)(without knowledge to agree or disagree). The fresh fruits and vegetables are used to supplement detainee diets and served as part of the dietician approved menu. *Defts' Ex.* A.

According to Defendants, during 2013 the garden provided 3140 pounds of squash; 273 pounds of lettuce; 201 heads of cabbage; 1525 pounds of greens; 5102 pounds of cucumbers; 2733 pounds of okra; 91 pounds of beets; 4185 ears of corn; 221 pounds of banana peppers; 291 pounds of bell peppers; 151 pounds of jalapeno peppers; 588 pounds of green beans; 2126 pounds of tomatoes; 1060 pounds of cantaloupe; and 418 watermelon. *Defts' Ex.* A & A-2; *Resp.* at ¶ 8(D)(without knowledge to agree or disagree). The jail garden was operational in 2012 as well. *Resp.* at ¶ 8(E).

Plaintiff maintains that jail standards require the menu to be approved annually by a dietician. *Resp.* at ¶ 8(H). While inmates were fed three times a day, Plaintiff maintains the food should not be accepted as "meals" if "they do not contain an adequate diet that is approved annually as per jail standards by a . . . dietician." *Resp.* at ¶ 19(A).

Plaintiff states the Defendants have produced no proof that the menu received annual approval by a dietician. *Resp.* at ¶ 8(H). Further, he maintains the menu is not followed. *Id.* Plaintiff states he suffered no injury as a result of the menu he was served at the BCDC. *Id.* He indicates he weighed 167 pounds when booked into the ADC and five months later upon his

---

[4] Act 309 of 1983 as amended is an inmate program operated by the Arkansas Department of Correction. The Director of the Department of Correction signs cooperative agreements with county and city officials for the purpose of providing additional space for the care and custody of State inmates on a temporary basis in detention facilities operated by counties and cities. The inmates may be used to work in and around governmental property/projects while under supervision of the sheriff or chief of police or designee.

release weighed 200 pounds. *Id.* He contends this amount of weight gain over that short of a period proves that the BCDC diet was insufficient. *Id.* at ¶ 19(B).

While he was provided with clothing, he maintains it was not adequate because Mathis' clothing was washed with that of the other inmates. *Resp.* at 19(C). He was able to shower on a regular basis. *Id.* at ¶ 19(D). Plaintiff asserts that the cells and day room were only cleaned once a day. *Id.* at ¶ 19(F). Given that Mathis and Newby touched inmates and the living areas, Plaintiff maintains the once a day cleaning was not sufficient. *Id.* Plaintiff also indicates they went days with the jail being too hot while they waited for the maintenance man to adjust the thermostat. *Id.* at ¶ 19(G).

Each general population pod at the BCDC a has a television. *Resp.* at ¶ 9(A). The jailers have been instructed to leave the TV tuned to an all news channel. *Id.* at ¶ 9(B). Plaintiff maintains the TV stays tuned to CNN television which provides world and national news. *Id.* at ¶ 9(C). He asserts it is basically "tragedy news" and has no segments on local news. *Id.* at ¶ 9(D). The TV stayed on between 8:00 a.m. and 9:00 p.m. *Id.* at ¶ 9(E). Inmates are not allowed to turn the TV off and it "blares" all day with "repetitious" and "depressing" coverage. *Id.* at ¶ 9(F).

Although Defendants maintain inmates have daily access to the Harrison Daily Times or other newspapers, Plaintiff states they sometimes go days without seeing a newspaper. *Resp.* at ¶¶ 10(B) & 10(D). Plaintiff indicates they get one paper for four pods with up to twenty people per pod. *Id.* He states the paper just does not make it around to all inmates. *Id.* at ¶¶ 10(B) & 10(C).

A fellow inmate, Chad Suddereth, made threats, used racial slurs and yelled everyday. *Resp.* at ¶ 12(A). Plaintiff was never attacked by Suddereth. *Id.* at ¶ 12(B). Plaintiff asserts that BCDC rules state that no inmate is allowed to act as pod boss, make threats or racial slurs. *Id.* He indicates these rules were not enforced. *Id.* Plaintiff was only in the same pod as Suddereth a single day. *Id.*

Plaintiff never personally spoke with, or communicated with, Sheriff Moore or Sheriff Hickman. *Resp.* at ¶ 14(B) & 15(B). Plaintiff was asked how he believed Sheriff Moore violated his federal constitutional rights. *Id.* at ¶ 14(A). Plaintiff responded:

> Sheriff is in charge of BCDC. He is responsible to provide a safe environment. He allows and therefore is responsible misconduct of others. Poor medical treatment, insufficient diet and the like. He needs to be held accountable for not providing such and not doing his job. I was subject to cruel & unusual punishment because he failed to do his job.

*Id.* He indicated Sheriff Hickman violated his rights in the "very same way." *Id.* at ¶ 15(A).

Plaintiff was asked how he believed Jason Day violated his federal constitutional rights. *Resp.* at ¶ 16(A). Plaintiff responded: "Jason Day is the BCDC Jail Administrator. He oversees the jail operations. He too, is responsible to provide a safe & secure environment. As with both Sheriff Moore & Hickman." *Id.* Plaintiff further maintains that Day protected his jailors, lied about their misconduct, and failed to discipline them. *Id.* at ¶ 16(B). Finally, Plaintiff states Day failed to have the menu approved annually and did not provide a healthy and safe environment. *Id.*

Plaintiff could have visitation. *Resp.* at ¶ 19(J). He had access to medical care. *Id.* at ¶ 19(K). He was able to send legal mail and file lawsuits while he was confined to the BCDC.

*Id.* at ¶ 19(L). He does not contend a custom or policy of Boone County was the moving force behind the violations of his constitutional rights. *Id.* at ¶ 20.

### 2. Applicable Standard

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986), the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *National Bank of Commerce v. Dow Chemical Co.*, 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." *National Bank*, 165 F.3d at 607 (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id*. (*citing, Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)).

### 3. Discussion

Plaintiff concedes certain of his claims are duplicative of those raised in other cases. Those claims should be dismissed and will not be further addressed here. Specifically, the Court will not address the following claims: the claim that detention center personnel were not adequately trained in the use of tasers and pepper spray; the claim regarding the alleged failure

to investigate Plaintiff's kidnaping; the claim that allowing only post-cards for personal mail violated his rights; the claims against Watson and King; his claim regarding the lack of outside exercise; and his claim of denial of access to a law library.

This leaves for further resolution the following conditions of confinement claims: his claim that he was subject to unconstitutional conditions of confinement when he was incarcerated with inmates having genital herpes and/or staph infection; his claim he was denied adequate nutrition; his claim that he was forced to listen to CNN and frequently did not have access to local news; and his claim he was denied a safe environment. Defendants maintain they are entitled to summary judgment on each claim.

**(A). Unconstitutional Conditions of Confinement**

The Eighth Amendment to the United States Constitution prohibits the imposition of cruel and unusual punishment. U.S. Const. amend. VIII. The Cruel and Unusual Punishment Clause of the Eighth Amendment forbids conditions that involve the "wanton and unnecessary infliction of pain," or are "grossly disproportionate to the severity of the crime." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).

"[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." *County of Sacramento v. Lewis*, 523 U.S. 833, 851 (1998)(citation omitted). The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones. *See Farmer v. Brennan*, 511 U.S. 825, 832 (1994).

"The Eighth Amendment prohibits punishments that deprive inmates of the minimal civilized measure of life's necessities." *Smith v. Copeland*, 87 F.3d 265, 268 (8th Cir. 1996);

*see also Hall v. Dalton*, 34 F.3d 648, 650 (8th Cir. 1994)("[I]n this circuit, the standards applied to Eighth Amendment and Fourteenth Amendment claims have been the same."). Jail or prison officials must provide reasonably adequate ventilation, sanitation, bedding, hygienic materials, food, and utilities. Prison conditions claims include threats to an inmate's health and safety. *Irving v. Dormire*, 519 F.3d 441, 446 (8th Cir. 2008)(citation omitted).

To state an Eighth Amendment claim the plaintiff must allege that prison officials acted with "deliberate indifference" towards conditions at the prison that created a substantial risk of serious harm. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). "Conditions of confinement, however, constitute cruel and unusual punishment 'only when they have a mutually enforcing effect that produces deprivation of a single, identifiable human need such as food, warmth, or exercise.'" *Whitnack v. Douglas County*, 16 F.3d 954, 957 (8th Cir. 1994)(*quoting, Wilson v. Sieter*, 501 U.S. 294 (1991)).

This standard involves both an objective and subjective component. The objective component requires an inmate to show that "he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834 (citations omitted); *see also Hudson v. McMillian*, 503 U.S. 1 (1992)(The objective component is "contextual and responsive to contemporary standards of decency.")(quotation omitted). To satisfy the subjective component, an inmate must show that prison officials had "a sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834 (citations omitted); *see also Brown v. Nix*, 33 F.3d 951, 954-55 (8th Cir. 1994).

**(a). Exposure to Inmates with Infectious Disease**

Defendants move for summary judgment on the grounds there is no evidence that any sexually transmitted disease or staph was ever actually contracted by Plaintiff. Defendants assert

-9-

that Plaintiff's allegation that he was living in fear is insufficient to state a constitutional claim. Even if Plaintiff could establish he contracted a disease as a result of his incarceration, Defendants maintain Plaintiff cannot establish that the Defendants deliberately disregarded the Plaintiff's serious medical needs.

Knowingly exposing a prisoner to a infectious disease may constitute cruel and unusual punishment in violation of the Eighth Amendment. *Helling v. McKinney*, 509 U.S. 25, 35 (1993); *Butler v. Fletcher*, 465 F.3d 340, 345 (8th Cir. 2006). In *Helling,* the question was whether a prisoner stated an Eighth Amendment claim by alleging that the detention center officials have, "with deliberate indifference, exposed him to high levels of environmental tobacco smoke (ETS) that pose an unreasonable risk of serious damage to his future health." *Helling*, 509 U.S. at 35. The Court held that an Eighth Amendment claim was stated. *Id*.

With respect to the objective factor of the deliberate indifference inquiry, the Court noted the Plaintiff must show that he was "being exposed to unreasonably high levels of ETS." *Helling,* 509 U.S. at 35. It also stated that:

> "determining whether McKinney's conditions of confinement violate the Eighth Amendment requires more than a scientific and statistical inquiry into the seriousness of the potential harm and the likelihood that such injury to health will actually be caused by exposure to ETS. It also requires a court to assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk. In other words, the prisoner must show that the risk of which he complains is not one that today's society chooses to tolerate."

*Id.* at 36.

Genital herpes is a sexually transmitted disease. It is caused by two viruses--herpes simplex type 1 and herpes simplex type 2. http://www.cdc.gov/std/herpes/STDFact-herpes.htm

(accessed 1/30/2015). It spreads by having "vaginal, anal, or oral sex with someone who has the disease." *Id.* Thus, the risk of damage to Plaintiff is minimal. Plaintiff knew which inmates had genital herpes and could merely avoid the risk by not choosing either inmate as a sexual partner.

At issue also is the exposure to staph infection. This involves one inmate, Mathis, who Plaintiff was housed with for thirty-nine days. "Staph infections are caused by staphylococcus bacteria, types of germs commonly found on the skin or in the nose of even healthy individuals." http://www.mayoclinic.org/diseases-conditions/staph-infections/basics/definition/con-20031418 (accessed 1/30/2015). Infections are usually caused by bacteria carried on an individual's own body. *Id.* However, "bacteria can also be transmitted from person to person. Because staph bacteria are so hardy, they can live on inanimate objects such as pillowcases or towels long enough to transfer to the next person who touches them." *Id.* The bacteria can survive drying, extremes of temperature, and high levels of salt. *Id.* It "can also survive on clothing and bedding that isn't properly washed." *Id.*

When considering the objective component of the Eighth Amendment inquiry, the courts look to such thing as the frequency and duration of the condition and measures taken to alleviate the condition. *See e.g., Shannon v. Graves*, 257 F.3d 1164, 1168 (10th Cir. 2001). Here, the summary judgment record contains no information on: the measures employed to alleviate the risk of infection from Mathis; the protocol for handling inmates with staph infections or other infectious diseases; or the efforts made, if any, to ensure the staph bacteria was not spread through the improper washing of clothing and bedding. *See e.g., DeGidio v. Pung*, 920 F.2d 525, 533 (8th Cir. 1990)(the continuing failure by prison officials to institute a system to prevent the spread of tuberculosis violated the Eighth Amendment). Contrary to Defendants' suggestion,

-11-

Plaintiff need not have contracted the disease for an actionable claim to be stated. I believe there are genuine issues of material fact as to whether Plaintiff being housed with an inmate with staph infection constitutes deliberate indifference to his constitutional rights.

### (b). Inadequate Diet

The Eighth Amendment's prohibition against cruel and unusual punishment is violated if an inmate is not provided with meals adequate to maintain his health. *See e.g., Keenan v. Hall*, 83 F.3d 1083, 1091 (9th Cir. 1996); *Wishon v. Gammon*, 978 F.2d 446, 449 (8th Cir. 1992)(prisoners have a right to nutritionally adequate food); *Campbell v. Cauthron*, 623 F.2d 503, 508 (8th Cir. 1980)(prisoners are guaranteed a reasonably adequate diet). To prevail on an Eighth Amendment claim, Plaintiff on must show the Defendants were deliberately indifferent to his dietary needs. *Wishon*, 978 F.2d at 449.

Merely because the food served is not prepared to an inmate's taste does not implicate the Eighth Amendment. Rather, the Eighth Amendment is only violated if the food provided is inadequate to maintain good health. *See e.g., Burgin v. Nix*, 899 F.2d 733, 734-35 (8th Cir. 1990)(inmates do not have a right to be served a particular type of food); *see also Wilson v. Seiter*, 501 U.S. 294, 298 (1991)(the deprivation of food constitutes cruel and unusual punishment only if it denies a prisoner the minimal civilized measure of life's necessities).

Here, Plaintiff does not maintain that the meals were prepared in an unsafe manner or that the food itself was contaminated. He does not assert that he became ill as a result of the diet he was served or that he lost any significant amount of weight as a result of the diet he received. Instead, he merely points out that he gained weight once he was at the ADC. A weight gain can have a number of contributing factors and does not suggest the diet he was served at the BCDC

was inadequate. His assertion that the diet was not approved on a yearly basis by a dietician in compliance with Arkansas Jail Standards does not equate to a constitutional violation. *See e.g., United States v. Suing*, 712 F.3d 1209, 1213 (8th Cir. 2013)(Violations of state law or state standards does not necessarily equate to a constitutional violation).

Defendant is entitled to summary judgment on this claim.

**(c). Exposure to Noise**

Exposure to loud and constant nosie can constitute an Eighth Amendment violation. *See e.g., Keenan v. Hall*, 83 F.3d 1083, 1090 (9th Cir. 1996)(reversing summary judgment in favor of official who subjected prisoner to constant screaming, wailing, crying, singing and yelling); *Toussaint v. McCarthy*, 597 F. Supp. 1388, 1397 (N.D. Cal. 1984)("[P]ublic conceptions of decency inherent in the Eighth Amendment require that [inmates] be housed in an environment that, if not quiet, is at least free of excess nosie"), *rev'd in part on other grounds*, 801 F.2d 1080, 1110 (9th Cir. 1986). Noise is considered extreme when it is harmful to the health and well being of inmates and inflicts pain without penologocial justification. *Id.*; *see also Lunsford v. Bennett*, 17 F.3d 1574, 1580 (7th Cir. 1994)("Subjecting a prisoner to a few hours of periodic loud noises that merely annoy, rather than injure the prisoner does not demonstrate a disregard for the prisoner's welfare.").

Here, Plaintiff states the television, tuned to CNN, "blares" from 8:00 a.m. to 9:00 p.m. The only harm he mentions is that he finds the news to be repetitive and depressing. This harm is related to the content of the news and the length of time the television is tuned to the same channel. It does not suggest that the noise level was so extreme that it adversely affected his health. Defendants are entitled to summary judgment on this claim.

**(d). Unsafe Environment**

Plaintiff generally alleges that the environment is unsafe. The only specifics he mentions are related to the conduct of Suddereth. Plaintiff was housed with Suddereth for only twenty-four hours. There certainly is nothing to suggest the conditions were so extreme that Plaintiff was deprived of a single identifiable human need such as safety. Defendants are entitled to summary judgment on this claim.

**(B). First Amendment Access to News Claim**

Although Defendants have chosen to treat Plaintiff's access to local news claim as an Eighth Amendment claim, I believe it is more appropriately treated as a First Amendment claim. Plaintiff maintains he did not have access to local news. While newspapers were distributed at the jail, Plaintiff states that few newspapers were distributed and they often did not reach the pod he was in. In fact, he claims there was only one newspaper for eighty inmates. *Resp.* at ¶¶ 10(B) & 10(D). He states he would go days without any access to local news. Defendants merely allege generally that "[e]very attempt is made to give detainees access to news, which includes daily access to the Harrison Daily Times or other newspaper." *Defts' Ex.* A at ¶ 12. No further information is given regarding the distribution of newspapers as a means of allowing access to local news coverage.

"Prison walls do not form a barrier separating prison inmates from the protections of the Constitution." *Thornburgh v. Abbott*, 490 U.S. 401, 407 (1989). "[A] prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817,

822 (1972). Among other things, the "Constitution protects the rights to receive information and ideas." *Kleindienst v. Mandel*, 408 U.S. 753, 762 (1972).

A number of courts have held that prisoners have a right to receive and read newspapers. *See e.g., Sizemore v. Williford*, 829 F.2d 608, 610 (7th Cir. 1987)(absent restrictions based on legitimate goals of confinement, prison inmates retain a First Amendment right to receive and read newspapers); *Mitchell v. Untreiner*, 421 F. Supp. 886, 895 (N.D. Fla. 1976)(failure to permit inmates to read daily newspaper denied First Amendment freedom of speech, association, and right to be informed citizens in a democratic society). Furthermore, at least one court has noted that "there is considerable popular and academic literature distinguishing the experience of reading from that of watching television or listening to the radio." *Spellman v. Hopper*, 95 F. Supp. 2d 1267, 1283 n. 28 (M.D. Ala. 1999); *Mann v. Smith*, 796 F.2d 79, 83 (5th Cir. 1986) ("Whatever the intrinsic merits of television in comparison with newspapers and magazines, the contents of television are different from what one finds in the printed media.").

Prison policies impinging on inmates' First Amendment rights are valid only if they are reasonably related to legitimate penological interests. *Turner v. Safley*, 482 U.S. 78, 89-90 (1987); *Cooper v. Schriro*, 189 F.3d 781, 784 (8th Cir. 1999). "[E]ven though this court engages in a deferential review of the administrative decisions of prison authorities, the traditional deference does not mean that courts have abdicated their duty to protect those constitutional rights that a prisoner retains." *Fortner v. Thomas*, 983 F.2d 1024, 1029 (11th Cir. 1993).

Here, there is no total ban on newspapers and, in fact, according to Plaintiff one newspaper is distributed at the jail on a daily basis. However, the summary judgment record contains no information on how many newspapers are distributed at the jail, how they are

distributed, whether they are available on daily basis, who distributes the newspapers, etc. The record is simply insufficient to determine if Defendants are entitled to summary judgment on this claim.

### (C). Official Capacity Claims

Defendants maintain they are entitled to judgment in their favor on all official capacity claims. Official capacity claims are "functionally equivalent to a suit against the employing governmental entity." *Veatch v. Bartels Lutheran Home*, 627 F.3d 1254, 1257 (8th Cir. 2010). In other words, the official capacity claims are treated as claims against Boone County. *See Murray v. Lene*, 595 F.3d 868, 873 (8th Cir. 2010).

"[I]t is well established that a municipality cannot be held liable on a *respondeat superior* theory, that is, solely because it employs a tortfeasor." *Atkinson v. City of Mountain View, Mo.*, 709 F.3d 1201, 1214 (8th Cir. 2013). To establish Boone County's liability under § 1983, "plaintiff must show that a constitutional violation was committed pursuant to an official custom, policy, or practice of the governmental entity." *Moyle v. Anderson*, 571 F.3d 814, 817 (8th Cir. 2009)(citation omitted).

Here, Plaintiff does not contend that a custom or policy of Boone County was the moving force behind the violations of his constitutional rights. *Resp.* at ¶ 20. Defendants are therefore entitled to summary judgment in their favor on the official capacity claims.

### (D). Qualified Immunity

Defendants make the argument that they are entitled to summary judgment on all individual capacity claims on the basis of qualified immunity. They assert that "Plaintiff cannot offer any proof of any violation of clearly established law by the Defendants because any theory

of liability requires some knowledge of the risk." *Doc. 56* at pg. 14. With respect to the two claims that remain, the summary judgment record is simply insufficient to provide a basis on which the Court can make the required qualified immunity analysis.

### 4. Conclusion

For the reasons stated, I recommend the claims that are identical to ones Plaintiff has asserted in other cases should be dismissed as duplicative and/or barred by *res judicata*. These claims are: (1) his claim that the detention officers were not properly trained in regard to the use of tasers and pepper spray and used these chemical agents for intimidation purposes, *Brown v. Boone County, et al.*, Civil No. 13-3065; (2) his claim that he was discriminated against when Defendants failed to investigate his kidnaping and his claim about restricting mail to post-cards, *Brown v. Hickman*, Civil No. 12-3150; (3) his claims against Detective Ryan Watson and Captain Bob King, *Brown v. Hickman*, Civil No. 12-3150; (4) his lack of outside exercise claim, *Brown v. Hickman*, Civil No. 14-3005; and (5) any claim that he was denied access to a law library, *Brown v. Hickman*, Civil No. 12-3150. This means all claims against Detective Ryan Watson and Captain Bob King should be dismissed.

I further recommend that Defendants' Motion for Summary Judgment (Doc. 55) be granted in part and denied in part. Specifically, it should be granted with respect to Plaintiff's conditions of confinement claims regarding the diet he was provided, the safety of the environment, and the excessive noise. Additionally, Defendants should be granted summary judgment on all official capacity claims.

This leaves for later resolution Plaintiff's claim about being housed with an inmate with staph infection and his claim that he was denied access to newspapers and local news for days at a time.

**The parties have fourteen (14) days from receipt of the report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 3rd day of February, 2015.

/s/ *Mark E. Ford*
HON. MARK E. FORD
UNITED STATES MAGISTRATE JUDGE